IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-03317-CMA-SKC

SAN JUAN CONSTRUCTION, INC.,

    Plaintiff,

v.

W.R, BERKLEY SYNDICATE MANAGEMENT LIMITED,
HELVETIA SWISS INSURANCE COMPANY,
GREAT LAKES INSURANCE SE,
ASPEN INSURANCE UK LTD, and
MAPFRE ESPANA, COMPANIA DE SEGUROS Y REASEGUROS, S.A.,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

---

    This matter is before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. # 18). The Court finds that oral argument would not materially assist in resolving the Motion and therefore denies Defendants' Motion for Hearing (Doc. # 39). For the following reasons, the Court grants Defendants' Motion to Compel Arbitration and Stay Proceedings.

### I.    BACKGROUND

    This action arises from an insurance coverage dispute related to a claim for losses associated with a construction project located at the U.S. Army Kwajalein Atoll, U.S. Marshall Islands. (Doc. # 1 at ¶ 10.) Plaintiff San Juan Construction, Inc. is a

Colorado corporation that was awarded a contract by the U.S. Army Corps of Engineers to replace fuel storage tanks on Kwajalein. (*Id.* at ¶¶ 7, 13.) Plaintiff purchased a project specific builders' all risk policy, policy number B128417012W18 (the "Policy") from Defendants[1] (collectively, "Insurers") with effective dates of coverage from November 11, 2018, to December 31, 2020. (*Id.* at ¶¶ 20–21.) The Policy contains the following Mediation/Arbitration provision:

> **13. Mediation/Arbitration**
>
> a) Mediation
>
> If any dispute or difference of whatsoever nature arises out of or in connection with this Policy, including any question regarding its existence, validity or termination (hereinafter referred to as Dispute) the parties undertake that prior to a reference to arbitration in accordance with b) below they will seek to have the Dispute resolved amicably by written notice initiating that procedure.
>
> All rights of he [sic] parties in respect of the Dispute are and shall remain fully reserved and the entire mediation including all documents produced or to which reference is made discussions and oral presentations shall be strictly confidential to the parties and shall be conducted on the same basis as 'without prejudice' negotiations, privileged, inadmissible not subject to disclosure in any other proceedings whatsoever and shall not constitute any waiver of privilege whether between the parties or between either of them and a third party.
>
> The mediation may be terminated should any party so wish by written notice to the appointed mediator and to the other party to that effect. Notice to terminate may be served at any time after the first meeting or discussion has taken place in the mediation.
>
> If the Dispute has not been resolved to the satisfaction of either party within 90 days of service of the notice initiating mediation, or if either party

---

[1] Defendants are W.R. Berkley Syndicate Management Limited, named in Plaintiff's Complaint as "W/R/B Underwriting, a W.R. Berkley Corporation," Helvetia Swiss Insurance Company, Great Lakes Insurance SE, named in Plaintiff's Complaint as "Munich RE UK Services Limited," Aspen Insurance UK Ltd., and MAPFRE Global Risks. (Doc. # 18 at 1.)

> fails or refuses to participate in the mediation, or if either party serves written notice terminating the mediation under this clause, then either party may refer the Dispute to arbitration in accordance with b).
>
> Unless the parties agree otherwise, the fees and expenses of the Mediator and all other costs of the mediation shall be borne equally by the parties and each party shall bear their own respective costs incurred in the mediation regardless of the outcome of the mediation.
>
> b) Arbitration
>
> Subject to clause a), any Dispute shall be referred to an arbitrator appointed by the parties in accordance with the statutory provisions in force in the State of (Home State).
>
> In the absence of any such statutory provisions, and unless the parties agree upon a single arbitrator within thirty days of one receiving a written request from the other for arbitration, the claimant shall appoint his arbitrator and give written notice thereof to the respondent. Within thirty days of receiving such notice, the respondent shall appoint his arbitrator and give written notice thereof to the claimant, failing which, the claimant may apply to the appoint or, hereinafter named, to nominate an arbitrator on behalf of the respondent.
>
> The arbitrator(s) shall have power to set all procedural rules for the holding of the arbitration, and all costs of the arbitration shall be paid by the parties and in the manner as directed by the arbitrator(s). The award of the arbitrator(s) shall be given in writing, with reasons, and both parties hereby agree to be bound by the award given in accordance with the above provisions.
>
> Where any difference is by this Condition to be referred to arbitration the making of an Award shall be a condition precedent to any right of action against the Insurers.

(Doc. # 1-1 at 33–34.) The Policy further provides that "[i]t is understood and agreed by the Insured and the Insurers that any dispute between them concerning the interpretation of this Policy shall be subject to the Laws of Colorado." (*Id.* at 31.)

As a result of significant weather events, certain building materials were damaged at the construction site at Kwajalein. (Doc. # 1 at ¶ 18.) Plaintiff submitted a

3

claim to Insurers, which denied coverage on August 13, 2021. (*Id.* at ¶¶ 29, 36.) Plaintiff initiated the instant lawsuit against Insurers on December 10, 2021. *See generally* (*Id.*) In its Complaint, Plaintiff asserts causes of action for (1) breach of contract, (2) statutory bad faith breach of insurance contract, (3) unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116, and (4) declaratory judgment. (Doc. # 1.)

Insurers notified Plaintiff on February 22, 2022, that Insurers were invoking the Mediation/Arbitration provision in the Policy in connection with all claims Plaintiff asserted in this litigation. (Doc. # 18-1.) Insurers then filed the instant Motion to Compel Arbitration and Stay Proceedings on February 25, 2022. (Doc. # 18.) Plaintiff filed its Response in opposition (Doc. # 34), and Insurers followed with their Reply (Doc. # 36).

## II.     LEGAL STANDARDS

The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). However, the question of whether parties "have a valid arbitration agreement at all" is a "gateway matter" that is presumptively for the courts to decide. *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 611 (10th Cir. 2014) (unpublished) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)). "Whether an agreement to arbitrate exists 'is simply a matter of contract between the parties.'" *Id.* (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)). The Court applies ordinary state law principles that govern the formation of contracts to

determine whether the parties have agreed to arbitrate a dispute. *Walker*, 733 F.3d at 1004. The Court must give due regard to both federal and Colorado policy favoring the resolution of disputes through arbitration. *See Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 475–76 (1989) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration Act ("FAA")], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."); *J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007) ("Colorado law favors the resolution of disputes through arbitration.").

Under Colorado law, a contract requires a "meeting of the minds." *Schulz v. City of Longmont, Colo.*, 465 F.3d 433, 438 n. 8 (10th Cir. 2006). "Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law." *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) (internal quotation marks omitted). The mere fact that the parties differ on their interpretations of a contract does not itself create an ambiguity. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). In determining whether a contractual provision is ambiguous, the Court examines the contractual language and construes it "'in harmony with the plain and generally accepted meaning of the words used,' with reference to all of the agreement's provisions." *Dorman*, 914 P.2d at 912 (quoting *Fibreglas Fabricators, Inc.*, 799 P.2d at 374). A provision is ambiguous if it is susceptible to more than one interpretation. *Id*. Further, the Court should seek "to harmonize and to give effect to all provisions so that none will be rendered

meaningless." *Copper Mountain, Inc. v. Indus. Sys. Inc.*, 208 P.3d 692, 697 (Colo. 2009) (quoting *Pepcol Mfg. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)).

Where the parties dispute whether an arbitration agreement exists, the party moving to compel arbitration bears a burden similar to what a movant for summary judgment faces. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). If the moving party carries this burden, the burden shifts to the non-moving party to show a genuine issue of material fact about the formation of the agreement to arbitrate. *Id.* Where, as in the instant case, there are no material disputes of fact, "it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

### III.   DISCUSSION

The parties dispute whether the Policy's arbitration provision is mandatory or permissive. Insurers argue that the Mediation/Arbitration provision, read in harmony with the entire Policy, details a two-step alternative dispute resolution process whereby the parties must first undertake mediation and then, if any dispute remains unresolved, the parties must proceed to arbitration prior to any suit. (Doc. # 18 at 8–10.) Insurers also aver that the arbitration provision does not allow a party to refuse to participate once another party invokes arbitration. (Doc. # 36 at 4.) Finally, Insurers note that both Colorado and federal policy favor arbitration, particularly when arbitration provisions, like that in the Policy, broadly require the parties to arbitrate any dispute that "arises out

6

of or in connection with the Policy." (Doc. # 18 at 6–7.) Insurers thus request that the Court compel arbitration and stay this proceeding pending the resolution of arbitration. (*Id.* at 11.)

Plaintiff contends that language in the arbitration provision, particularly use of the word "may" rather than "must" or "shall," renders the provision permissive rather than mandatory. (Doc. # 34 at 5.) Further, Plaintiff argues that if the Court finds the provision to be ambiguous, the Court must resolve all ambiguities in Plaintiff's favor as the policyholder. (*Id.* at 10.) Finally, Plaintiff argues that it would be prejudiced by mandatory arbitration because its "statutory bad faith claims could be severely limited" by discovery limitations and potentially being unable to recover attorney fees. (*Id.* at 15.)

The Court agrees with Insurers that the arbitration provision is unambiguous and mandatory. The Policy outlines a two-part alternative dispute resolution procedure: First, "[i]f any dispute or difference of whatsoever nature arises out of or in connection with this Policy, . . . the parties undertake that prior to a reference to arbitration . . . they will seek to have the Dispute resolved" through mediation. (Doc. # 1-1 at 33.) The Policy provides that "[t]he mediation may be terminated should any party so wish by written notice to the appointed mediator and to the other party to that effect." (*Id.*) The Policy continues:

> If the Dispute has not been resolved to the satisfaction of either party within 90 days of service of the notice initiating mediation, or if either party fails or refuses to participate in the mediation, or if either party serves written notice terminating the mediation under this clause, then either party may refer the Dispute to arbitration in accordance with b).

7

(*Id.*) Clause b) of the Mediation/Arbitration provision then provides that "[s]ubject to clause a), any Dispute **shall** be referred to an arbitrator." (*Id.*) (emphasis added). After outlining the procedures for arbitration, the Policy states that "both parties hereby agree to be bound by the award given in accordance with the above provisions." (*Id.* at 34.) Finally, "[w]here any difference is by this Condition to be referred to arbitration the making of an Award **shall be a condition precedent** to any right of action against the Insurers." (*Id.*) (emphasis added). Applying the legal principles of contract interpretation above, the Court agrees with Insurers that this language unambiguously reflects the intent of the parties (1) to first seek to resolve a dispute through mediation, and (2) if a dispute remains unresolved after mediation is invoked, and a party wishes to pursue resolution, the party may proceed to invoke arbitration. When a party invokes arbitration, the dispute "**shall** be referred to an arbitrator," the arbitration award will be binding, and the making of an award "**shall** be a condition precedent to any right of action." (*Id.* at 33–34) (emphases added).

The Court finds unpersuasive Plaintiff's attempts to construe the Mediation/Arbitration provision as permissive rather than mandatory. Plaintiff argues that the clause "either party **may** refer the Dispute to arbitration" means that arbitration is merely an option for dispute resolution. (Doc. # 34 at 5–6) (emphasis added). However, reading the provision as a whole, the Court agrees with Insurers that "may" does not suggest that a party may either proceed to arbitration or file suit; rather, "may" indicates that if a dispute remains unresolved after mediation, a **party may pursue further dispute resolution**, and the required next step is arbitration. *See Hughley v.*

8

*Rocky Mountain Health Maint. Org., Inc.*, 910 P.2d 30, 33 (Colo. App. 1995) ("[T]he use of the word "may" [in the arbitration provision] does not reveal any intent that parties are free to avoid the contract procedure in favor of judicial suit."), *rev'd on other grounds*, *Hughley v. Rocky Mountain Health Maint. Org., Inc.*, 927 P.2d 1325 (Colo. 1996); *see also Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 425 (D.C.C. 1984) ("[T]he use of the word 'may' in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration. Rather, '[t]he sole option an aggrieved party retained through use of the word 'may' was to abandon its claim.'" (quoting *Local 771, I.A.T.S.E. v. RKO Gen., Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977)).

      Even if the Court were to agree with Plaintiff that invoking arbitration is an optional alternative to filing suit, the Mediation/Arbitration provision nevertheless manifests the parties' intent that arbitration is mandatory once invoked. The Policy unambiguously states that once a party elects to refer a dispute to arbitration, the dispute "**shall** be referred to an arbitrator." (Doc. # 1-1 at 33.) Thus, when Insurers invoked arbitration, Plaintiff was contractually required to arbitrate. *See Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*, 648 F. Supp. 450, 452 (D. Colo. 1986) (concluding that the presence of the word "may" in the arbitration clause merely gave the party the option of arbitrating or abandoning a claim: "When either party elects to arbitrate and serves the proper notice, as was done here, then arbitration must ensue"). The Court also notes that while provision a) permits any party to terminate mediation if they so wish, provision b) allows no such latitude for a party to terminate arbitration. *See* (Doc. #

1-1 at 33–34.) To interpret the provision to allow a party to decline to participate in arbitration once arbitration is invoked would be to make the arbitration provision have no import at all. *See, e.g.*, *Chiarella v. Vetta Sports, Inc.*, No. 94 CIV. 5933 (PKL), 1994 WL 557114, at *3 (S.D.N.Y. Oct. 7, 1994) ("If the clause were wholly optional, as [Plaintiff] contend[s], it would serve no purpose. Parties can always submit disputes to arbitration if they both agree to do so, therefore, there would be no reason to include such a provision.").

Further, the Court finds that Plaintiff's permissive interpretation cannot be reconciled with the final line of the Mediation/Arbitration provision: "Where any difference is by this Condition to be referred to arbitration, the making of an Award shall be a condition precedent to any right of action against the Insurers." (Doc. # 1-1 at 34); *see Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283–84 (10th Cir. 2011) ("[I]n determining the meaning of a policy, we must 'interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." (quoting *Copper Mountain, Inc.*, 209 P.3d at 697)). The proper interpretation of the Mediation/Arbitration provision as a whole is that the parties must undertake a two-step alternative dispute resolution process prior to turning to the courts. Arbitration, once invoked, is mandatory. Accordingly, a valid and enforceable arbitration agreement exists between the parties and this Court is required to compel arbitration of Plaintiff's claims.

Finally, although Plaintiff argues that its statutory bad faith claims "could be severely limited if arbitrated," Plaintiff provides no authority for why this alleged

10

prejudice should require the Court to ignore a valid arbitration agreement. The Policy's Mediation/Arbitration provision applies to "any dispute or difference of whatsoever nature" that "arises out of or in connection with this Policy." (Doc. # 1-1 at 33.) This expansive language encompasses any alleged bad faith by Insurers, and Plaintiff is thus contractually required to arbitrate its statutory bad faith claims. Plaintiff also does not provide support for the alleged prejudice it may suffer if forced to arbitrate its statutory bad faith claims; Plaintiff merely speculates that it "may be unable to recover its attorneys' fees" and may not be able to "fully prosecute its bad faith claims due to discovery limitations" in arbitration. (Doc. # 34 at 15.) The Court does not find that this constitutes grounds to undermine the valid arbitration agreement in the Policy.

For the foregoing reasons, the Court concludes that the Policy sets forth the clear intent of the parties to arbitrate any dispute arising from the Policy. Insurers' Motion to Compel Arbitration is therefore granted, and this case shall be stayed pending the outcome of that arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); Colo. Rev. Stat. § 13-22-207(7) ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.").

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion for Hearing (Doc. # 39) is DENIED;

- Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. # 18) is GRANTED;

- the instant action is hereby STAYED pending completion of the arbitration proceedings; and

- the parties shall file a joint status report within 60 days of this Order, and every 60 days thereafter, informing the Court of the status of arbitration and advising the Court whether this case can be closed.

DATED:  May 9, 2022

        BY THE COURT:

        *Christine M. Arguello*
        CHRISTINE M. ARGUELLO
        United States District Judge